FILED

2014 Oct-30  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | | |
|---|---|---|
| RANDALL ANDREWS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  4:13-cv-01747-HGD |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI).  (Doc. 1).  The parties filed written consent and this action has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 9).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

## I.      Proceedings Below

Plaintiff filed applications for disability, DIB and SSI on February 3, 2011. (Tr. 132-42).   The applications were denied.   (Tr. 82-86).   Plaintiff requested a hearing before an administrative law judge (ALJ).   A hearing was held, and the ALJ issued a decision on January 9, 2013, finding that plaintiff was not disabled.   (Tr. 19-31).   The Appeals Council denied plaintiff's request for review.   (Tr. 1-7).   After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner and, therefore, a proper subject of this court's appellate review.   42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.   20 C.F.R. § 404.1520.   First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(i).   "Substantial work activity" is work that involves doing significant physical or mental activities.   20 C.F.R. § 404.1572(a).   "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.   20 C.F.R. § 404.1520(a)(4)(ii).   Absent such impairment, the claimant may not claim disability.

*Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work,  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant

can do given the RFC, age, education and work experience.   20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Plaintiff was 55 years old at the time of the ALJ's decision in this case which occurred in January 2013. (Tr. 30, 132). Plaintiff has a high school education with two years of college and past work experience as a poultry picker and laborer. (Tr. 46-47, 158, 159, 164, 173-80). Plaintiff alleges that his disability began in May 2009, as a result of blood clots, an arm injury and carpel tunnel. (Tr. 153, 158).

The ALJ found that plaintiff has the following severe impairments: hypertension, mild osteoarthritis of the left shoulder, mild degenerative joint disease of the lumbar spine, and left lower extremity deep vein thrombosis.  (Tr. 24). According to the ALJ, plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25).

The ALJ determined that plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he can stand and walk approximately six hours in an eight-hour day; sit approximately six hours in an eight-hour day;  and he can frequently balance, stoop, kneel, crouch and crawl, and climb ramps and stairs. (Tr. 25).  Based on this, the ALJ concluded that plaintiff is capable of performing past relevant work as a poultry picker, which is classified at the light

level of exertion and is unskilled with an SVP of 2.  According to the ALJ, this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  (Tr. 30).

## III.   Issues Presented

On appeal, plaintiff asserts that the ALJ's finding that plaintiff can perform past work was not based on substantial evidence and was not in accordance with the law.  (Doc. 12, Plaintiff's Brief, at 12).  Plaintiff also asserts that he meets Grid Rule 202.14 (closely approaching advanced age) and 202.04 (advanced age) and is therefore entitled to benefits.  (*Id.* at 16).  Finally, plaintiff alleges that the ALJ drew adverse inferences from the lack of medical testimony.  (*Id.* at 17).

## IV.   Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner;

instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Plaintiff bears the ultimate burden of proving disability. *See* 42 U.S.C. § 423(d)(1)(A), (5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Only after plaintiff has established his inability to return to his former occupation does the burden shift to the Commissioner to identify a significant number of jobs in the national economy that plaintiff can perform  given his capacities and vocational profile.

Plaintiff asserts that Dr. Daniel Prince, an examining physician, found that plaintiff could not work.  (Tr. 366-67).  According to plaintiff, the rejection of Dr. Prince's opinion and the finding that plaintiff can perform  light work are both based on a lack of medical evidence.  He bases this assertion on the ALJ's statement that "[t]he findings of Dr. Daniel Prince at Exhibit F are given little weight.  Dr. Prince's examination of the claimant was a one-time examination and his findings are inconsistent with the longitudinal medical evidence in this case.  (R-29)."  (Doc. 12, Plaintiff's Brief, at 14).

In addition, during the hearing before the ALJ, a vocational expert (VE) testified that, if plaintiff could not concentrate for more than 30 minutes, which would mean that he could not maintain persistence and pace for two hours at a time, plaintiff would be unable to work.  (*Id.* at 15).  The VE also testified that a poultry worker would have to be able to stand for at least two hours at one time and would not be allowed to lie down two to three hours a day.  Plaintiff testified that he was only able to stand for about five minutes before his legs became uncomfortable and that he had to shift back and forth.  (Tr. 53).  Based on this, plaintiff asserts that the ALJ erred in finding that he could return to his past work.

The ALJ found that plaintiff had the RFC to perform light work, except he can stand and walk approximately six hours in an eight-hour day; sit approximately six

hours in an eight-hour day; and he can frequently balance, stoop, kneel, crouch and crawl, and climb ramps and stairs.  (Tr. 25).  The ALJ noted that plaintiff reported that his ability to work was limited due to blood clots, an arm injury and carpal tunnel syndrome.  At the hearing, plaintiff testified that he has blood clots in his legs and that his leg swells.  He stated that he would only walk a block or two before his legs would swell.  He also testified that he has lupus, which affects his joints.  He further testified that he has constant pain all the way around his back which he rated as a seven to eight out of ten in severity.  Because of his back pain, he alleges that he has problems bending and that reaching with his left arm that causes him to ache.  He reported also that kneeling hurts his legs and that climbing stairs causes him pain.  According to plaintiff, his pain has been at this level for about two years.  According to plaintiff's testimony, he was hospitalized for about eight days with a pulmonary embolism.  He attempted to return to work after he was discharged but was not allowed to return.  Finally, he testified that he could only stand for about five minutes, after which his leg would start throbbing.  (Tr. 26).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.  (*Id.*).

According to the ALJ, the record evidence reflects that plaintiff was hospitalized on March 15, 2009, for acute respiratory failure after he complained of chest pain and shortness of breath.  He was diagnosed with a pulmonary embolism and pneumonia.  He was discharged on March 26, 2009, with diagnoses of a left para-pneumonia effusion status post chest tube placement; pneumonia, left lower lobe pneumonia; pulmonary thromboembolism; hypertension; tobacco abuse and chronic alcohol abuse.  (Tr. 26).

In May 2009, plaintiff was treated in the emergency room for lacerations from an assault.  The only medication he reported taking at the time of his treatment was Lisinopril.[1]  On May 26, 2009, plaintiff was admitted to the hospital with complaints of worsening left leg pain and swelling that he reported had been present for two or three days.  A venous Doppler study showed that plaintiff had deep vern thrombosis of his left lower extremity.  He was started on Coumadin and Heparin, and his condition began to stabilize.  After this hospitalization, plaintiff was treated in the emergency room in the hospital after he was kicked in the ribs in January 2011 and in April 2011 for a prolonged penile erection.  He did not make any complaints of leg pain during either one of those emergency room visits, nor did he seek help for his deep vein thrombosis.  (Tr. 27).

---

[1] Lisinopril is medication for the treatment of high blood pressure (hypertension).

Dr. Antonio Rozier, M.D., performed a medical examination of plaintiff on April 9, 2011, at the request of the state agency. (Ex. 2F). His primary complaints to Dr. Rozier were left leg pain and swelling and shoulder pain. He told Dr. Rozzier that he had not sought any treatment for his leg pain since 2009. He again reported that the only medication that he was taking was Lisinopril. Upon examination, plaintiff had normal coordination, station and gait. He had a minor deformity of the left deltoid, but no tenderness or contractures.[2] He did not have any tenderness, crepitus[3] or effusion[4] in his lower extremities. His muscle strength, bulk and tone were normal and he had normal sensation. Dr. Rozier's diagnoses were mild osteoarthritis of the left shoulder and left lower extremity deep vein thrombosis. (Tr. 27).

In his decision, the ALJ also noted that plaintiff began receiving treatment at Quality of Life Health Services in January 2012. At his initial visit, his blood pressure was elevated. (Ex. 7F). He reprted that he had been out of his hypertension medicine for a month. A physical examination revealed that plaintiff had a normal

---

[2] Contractures are the chronic loss of joint motion due to structural changes in non-bony tissue. These non-bony tissues include muscles, ligaments and tendons.

[3] Crepitus is a crackling or crunching sound heard when the ends of a fractured piece of bone rub against each other.

[4] Effusion is the escape of fluid from the blood vessels or lymphatics into the tissues or a cavity.

range of motion, muscle strength and stability in all extremities, with no pain on inspection. He was diagnosed with hypertension and prescribed Lisinopril. The ALJ noted that when he returned the following month, he reported no side effects from the medication. (Tr. 27).

In March 2012, plaintiff was hospitalized for two days for deep vein thrombosis of his lower extremities. (Ex. 10F). He was treated with Lovenox and Coumadin and released. At the time of his discharge, he was specifically advised to take his Coumadin. (Tr. 27). He was seen in a follow-up appointment on March 12, 2012. (Ex. 7F). The ALJ again noted that plaintiff again had a full range of motion of all his extremities, including his legs and knees, with no tenderness, swelling or joint deformity. When he returned later that month, it was noted that his deep vein thrombosis was resolved and his hypertension was well-controlled. (*Id.*).

It was noted that, in April 2012, plaintiff had not been compliant with taking some medication, partially due to substance abuse. While his left leg was slightly larger than the right on that visit, he had no pain on palpitation. He returned for lab results on April 5, 2010, at which time he reported that he did not have any pain or swelling in his lower extremities. (Ex. 7F).

In April 2012, plaintiff also sought treatment in the emergency room for complaints of intermittent lower back pain. (Ex. 10F). Although plaintiff had a

painful range of motion and straight leg raising reproduced his pain, he had no tenderness or swelling.  He also did not have any calf tenderness.  Plaintiff was diagnosed with low back pain and discharged.  (Tr. 28).

The ALJ also noted that, in May of 2012, plaintiff was seen at Quality of Life where he reported that his back pain had been radiating to his hips, but that it was improving.  A physical examination revealed some lumbar tenderness and moderate pain with motion, but his physical examination was otherwise normal.  He was prescribed Tramadol, Prednisone, ibuprofen and Ultram for pain.  (*Id.*).

According to the ALJ, in August 2012, plaintiff reported that his back pain fluctuated and occurred intermittently.  He also admitted non-compliance with his Coumadin.  Despite his intermittent back pain, he stated that he planned on trying to find a job.  (*Id.*).  It is further noted that, on that occasion, plaintiff advised that he quit taking all of his medications for a while, except for some Coumadin, during a period of time he was in a drug rehabilitation program.  He further stated that he had been "clean" for the past year.  (Ex. 12F at Tr. 412).  The ALJ also noted that, in a Function Report dated April 4, 2011 (Ex. 5E), plaintiff reported his daily activities, stating that he spent his days riding around with friends, looking for cans or scrap iron to sell.  (Tr. 28).

The ALJ also reviewed the independent medical examination that plaintiff underwent at the request of his attorney which was performed on October 15, 2012. The examination was performed by Dr. Daniel Prince, M.D. He noted some swelling of plaintiff's lower left extremity and decreased mobility and rotation of his cervical spine. (Ex. 9F). He stated that plaintiff's lumbar spine was stiff and tender and that his grip and pinch strength were reduced. He noted decreased flexion of his lumbar spine, tenderness and reduced mobility of his hips, and slightly tender shoulders. Dr Prince's final impression was "Complete permanent disability secondary to chronic blood clot abnormality, chronic anti-coagulant therapy, chronic pain syndrome unspecified and COPD severe." (Ex. 9F).

The day following his examination by Dr. Prince, plaintiff was seen at the Quality of Life clinic and reported that joint pain varied as to which joint hurt, but that his pain had lessened. (Ex. 12F at Tr. 433). Plaintiff had an elevated ANA[5] level and he was educated on lupus; however, the reason for the elevation of the ANA was not determined. In that same report, it was noted that, contrary to Dr. Prince's findings, plaintiff had no cervical or lumbar spine tenderness and each had normal mobility and curvature. His elbows, hips and knees had mild pain with motion. The

---

[5] ANA means Antinuclear Antibody and is a substance that can damage or destroy cell tissues. A positive ANA test can be found in many conditions including lupus, rheumatoid arthritis and scleroderma. *See* http://www.thelupussite.com/ana.html.

remainder of his physical exam was otherwise normal.  Plaintiff also reported that he was taking his medications as prescribed.  (Ex. 12F).

The ALJ found that plaintiff's medical records show that he has a long history of non-compliance with treatment.  However, when he is compliant, his symptoms and pain levels are reduced.  His pharmacy records reflect that he was prescribed hydrocodone once in 2009 (Ex. 3E), around the time of his deep vein thrombosis, and Tramadol three times in 2012.  (Ex. 14E).  The ALJ found that the lack of medications for pain undercuts plaintiff's allegations of constant, disabling pain.  (Tr. 28-29).  He reported a reduction in his joint pain once he began taking the prescribed medications for his pain.  (Exs. 7F, 11F & 12F).

According to the ALJ, plaintiff's medical records also show that, while he has not been compliant with his Coumadin, he was treated for deep vein thrombosis after 2009 until March of 2012.  Otherwise, he has not made any other complaints regarding problems with his legs or other symptoms that could be related to deep vein thrombosis.  The ALJ further noted that plaintiff himself reported that despite his reported pain, he planned to look for employment.  (Tr. 29).

Based on this evidence, the ALJ stated that plaintiff has experienced deep vein thrombosis of his lower extremities and that he has mild osteoarthritis, hypertension and some shoulder pain.  However, the ALJ also found that the symptoms from those

impairments are not so severe as to prevent him from working.  The impact of these impairments would be reduced by the above-stated RFC, which limits plaintiff to no more than a light level of exertion.  This would reduce the impact of his deep vein thrombosis and his reported joint pain in that he would be able to sit for extended periods and would not be required to stand or walk all day.  The impact of any leg and/or joint pain and symptoms associated with hypertension would further be reduced by limiting plaintiff to balancing, stooping, kneeling, couching, crawling and climbing rams or stairs no more than on a frequent basis.

The ALJ noted that, while plaintiff claims that he has pain in his lower extremities and shoulder that limits his lifting ability and affects his ability to bend, stand, walk, and climb stairs, etc., due to pain, his daily activities, including preparing meals, performing household chores, reading, watching television and fishing, are inconsistent with his report of constant of disabling pain.  (Tr. 29).

The ALJ also made note of the fact that, although plaintiff testified that he walks with a limp if he stands or walks too long, all of his physical examinations show him to have a normal gait.  Consequently, the ALJ found that plaintiff's statements regarding his limitations with respect to standing and walking and with respect to pain are not supported by the objective medical evidence of record.  (*Id.*).

According to the ALJ, despite plaintiff's allegations of pain and physical limitations, the treatment records and examinations do not provide evidence that supports his claimed limitations. The records do not support a finding that his ability to exert himself physically is seriously reduced such that he could not engage in work activity. The ALJ further found that his self-reported limitations are not consistent with the medical evidence, and plaintiff simply alleges a greater degree of debilitation than what the objective evidence can support. Therefore, the ALJ found that plaintiff's statements regarding his pain and limitations are not fully credible and that his impairments are not disabling.

The ALJ also gave the findings and opinion of Dr. Prince little weight. He based this on the fact that Dr. Prince's examination was a one-time examination and his findings are inconsistent with the longitudinal medical evidence in this case. The ALJ noted that, based on his examination of plaintiff and his review of plaintiff's medical records, Dr. Prince stated that plaintiff has "complete permanent disability." The ALJ states that, in the first place, an opinion of this type is reserved to the Commissioner. Next, none of plaintiff's treating physicians have rendered an opinion that would even suggest that plaintiff is disabled. Finally, a physical examination by his treating medical source the very next day contradicts the findings of Dr. Prince in that plaintiff did not have any limitations with respect to his cervical spine, and any

limitations he had with respect to his elbows, hips and knees were no more than mild in nature. Thus, according to the ALJ, because of these inconsistencies, the findings and opinion of Dr. Prince were given little weight. (Tr. 30).

However, the ALJ accorded the findings of Dr. Antonio Rozier significant weight. (Ex. 2F). The ALJ held that Dr. Rozier's findings are consistent with plaintiff's overall medical records that show that since 2009, plaintiff has had no problems related to his deep vein thrombosis and that his complaints of back and hip pain have been intermittent. Dr. Rozier's examination was consistent with other examinations which show that plaintiff had essentially normal physical examinations with some mild limitations of his lumbar spine and left shoulder. Because Dr. Rozier's findings were consistent with the great weight of the evidence, the ALJ gave them significant weight. (Tr. 30).

When determining the weight to give a doctor's opinion, an ALJ may consider numerous factors, including whether the doctor examined the claimant, whether he/she treated the claimant, the evidence the doctor presents to support his/her opinion, and whether it is consistent with the record as a whole and the doctor's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must afford substantial weight to a treating physician's opinion unless he finds "good cause" not to do so. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). If a physician only

examines the claimant one time, the ALJ does not have to consider this physician a "treating" physician and does not have to give "great weight" to his opinion. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). An ALJ may reject the opinion of a non-treating physician whenever the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). An ALJ does not owe the same level of deference to the opinions of one-time medical examiners as to treating physicians. *McSwain*, 814 F.2d at 619. Furthermore, the regulation in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state he is "disabled" or "unable to work," the agency will nevertheless determine disability based upon the medical findings and other evidence. The relevant regulations provide that an opinion from a medical source that a claimant is "disabled" or "unable to work" is not a medical opinion. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). Instead, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of a disability case. *See id.* Such an opinion is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3). Nevertheless, Social Security Ruling (SSR) 96-5p provides that "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."

Although Dr. Prince opined that plaintiff was "unemployable" and could not work (Tr. 366-67), the ALJ gave this opinion little weight because these are opinions reserved to the Commissioner and, thus, not due any special consideration, and also because Dr. Prince's findings are inconsistent with the treatment notes from plaintiff's treating source.  The day after his examination by Dr. Prince, plaintiff saw his treating source, who noted normal mobility of plaintiff's cervical and lumbar spine and normal gait.  (Tr. 28, 366-67, 433-37).  Thus, the ALJ stated valid reasons for giving little weight to the opinion of Dr. Prince.

In addition, the ALJ considered plaintiff's subjective complaints of pain and other symptoms.  A plaintiff's statements of symptoms alone are insufficient to establish a severe impairment.  20 C.F.R. § 404.1508 (2013) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms").  A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can be reasonable expected to give rise to the alleged pain. *Wilson v. Barnhart*,

284 F.3d 1291, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelly v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). The ALJ does not have to recite the pain standard word for word; rather, he must make findings that indicate that the standard was applied. *Cf. Holt*, 921 F.3d at 1223; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

The ALJ found that plaintiff had a medically determinable impairment that could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ noted that medical records do not support plaintiff in that he was prescribed hydrocodone only once in 2009, and Tramadol was prescribed three times in 2012. This undercut his claim of disabling pain. He also reported improvement when he took this medicine. Likewise, the ALJ noted that plaintiff's stated daily activities also undercut his claims of disabling pain. Thus, medical evidence did not confirm the severity of plaintiff's pain, nor was the objectively determined medical condition of such severity that it could have been reasonably expected to give rise to the alleged pain.

The record evidence, as discussed by the ALJ, provided substantial evidence in support of the ALJ's assessment of plaintiff's RFC. The ALJ then obtained the testimony of a vocational expert to determine if plaintiff could perform his past work

given his RFC for light work with some exertional limitations.  The VE testified that plaintiff's past work as a poultry worker was light, unskilled work.  (Tr. 30, 46-47). The VE testified that an individual with the plaintiff's light work limitations could perform work as a poultry picker.  (Tr. 76-77).  Based on this, the ALJ found that plaintiff could perform the past relevant work of a poultry picker as generally performed in the national economy.  This conclusion is supported by substantial evidence, as recited above.

Plaintiff also argues that the ALJ did not properly apply the grids in assessing plaintiff's claim.  (Doc. 12, Plaintiff's Brief, at 16-17).  The grids, however, are only applied if an ALJ determines that the claimant cannot perform his past relevant work at step four of the sequential evaluation process.  20 C.F.R. § 404.1569 ("We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work.").  At step four, the ALJ found that plaintiff was able to perform his past relevant work and was, therefore, not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 404.1560(b)(3), 416.920(a)(4)(iv), (f), and 416.960(b)(3). This conclusion is supported by substantial evidence, as noted above.  Therefore, the ALJ did not err in failing to use the grids.

Plaintiff also alleges that the ALJ improperly considered plaintiff's lack of medical treatment in assessing his claim. However, this is not borne out by the medical evidence. The ALJ noted that plaintiff had very few prescriptions for pain. Although plaintiff alleges that he could not pay for this medication, the ALJ's observation was that plaintiff lacked requests for prescription medication, not that he failed to fill the prescriptions once he received them. Furthermore, plaintiff's physical examinations were frequently normal in most respects, despite his claims of pain. In addition, plaintiff went from 2009 until 2012 without treatment for problems related to deep vein thrombosis. While he contends that he attempted to seek treatment but was turned away, the records reflect that he was treated at least twice in 2011 for conditions other than deep vein thrombosis during which this condition was not even mentioned. (Tr. 438-47, 463-78). Likewise, beginning in January 2012, plaintiff consistently visited the Quality of Life clinic, but records for those visits reflect only conservative treatment of plaintiff's deep vein thrombosis. (Tr. 321-53, 398-407, 412-33).

The record reflects that the ALJ properly considered plaintiff's treatment history in accordance with the regulations, SSR 96-7p and Eleventh Circuit case law. He also assessed plaintiff's credibility by examining the consistency of his complaints with the available medical and objective evidence and by the treatment records and

consultative examination by Dr. Rozier.  (Tr. 29-30, 256-59).  Contrary to plaintiff's assertion, the ALJ did not substantially rely on plaintiff's lack of medical treatment in finding that plaintiff was not disabled.

According to the Eleventh Circuit, "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Additionally, when an ALJ relies on noncompliance as the *sole* ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment. *See id.* at 1214.  The claimant in *Dawkins* testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription.  *Id.* at 1213.  In denying benefits, the ALJ relied "primarily if not exclusively" on evidence pertaining to the claimant's noncompliance with prescribed medical treatment.  *Id.* at 1212.   On appeal, the Eleventh Circuit reversed and remanded the case, concluding that, because the ALJ's finding that the claimant was not disabled was "inextricably tied to the finding of noncompliance," and the ALJ had erred by failing to consider the claimant's ability to afford the prescribed medical treatment.  *Id.* at 1214.

This case is distinguishable from *Dawkins* because, unlike in *Dawkins*, the ALJ's determination that plaintiff was not disabled was not significantly based on a finding of noncompliance.  Although there was some evidence of noncompliance on plaintiff's part, a review of the ALJ's decision reveals that his finding on this issue is based primarily on the fact that many of plaintiff's examinations show that plaintiff had essentially normal physical examinations with some mild limitations of his lumbar spine and left shoulder.  This finding was supported by the examination of Dr. Rozier.  Because Dr. Rozier's findings were consistent with the great weight of the evidence, the ALJ gave them significant weight.  Likewise, the ALJ considered plaintiff's daily activities, which did not support his claim of disabling pain.  Accordingly, the ALJ's failure to consider plaintiff's ability to afford his medication or seek more treatments does not constitute reversible error.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## VI.   Conclusions

There is substantial evidence that plaintiff could perform light work with the limitations as set out in plaintiff's RFC.  Likewise, there is substantial evidence that he can perform his past relevant work as a poultry picker and that such job exists in significant numbers in the national economy.  The ALJ provided detailed and adequate reasons for his findings.  Accordingly, upon review of the administrative

record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, that decision is due to be AFFIRMED.  A separate order will be entered.

DONE this 30th day of October, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE